.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.: 3:17CR36 (JCH) |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| TONEY KELSEY, | : | |
| Defendant | : | August 7, 2018 |

### DEFENDANT TONEY KELSEY'S
### MEMORANDUM IN AID OF SENTENCING

On May 22, 2018 the defendant Toney Kelsey was found guilty by jury verdict of Conspiracy to Commit Sex Trafficking of a Minor and Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1594(c) and 1591(a), (b)(2) and (c).  Mr. Kelsey's sentencing hearing is scheduled for August 14, 2018 and he faces a statutory mandatory minimum sentence of ten years' incarceration.  While Mr. Kelsey's offense conduct is serious, and he has not yet demonstrated acceptance of responsibility or expressed remorse, a sentence of ten years' incarceration followed by a lengthy term of Supervised Release with the significant conditions outlined in Mr. Kelsey's PSR is more than sufficient to meet the goals of sentencing. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1

.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

**Sentencing Considerations**

**Mr. Kelsey's Mental Health History**

As Mr. Kelsey did not participate in the preparation of his PSR, there is little information upon which to conclude his conduct is a byproduct of his upbringing. Tellingly though, discovery materials suggest and trial testimony confirms that Mr. Kelsey's mother, his most significant source of support, condoned his conduct, and that other family members and friends were involved in similar activity. It is reasonable to conclude that the environment in which Mr. Kelsey was raised may play a factor in his commission of this offense.[1]

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[1] Further supporting this observation is the fact that one of Mr. Kelsey's relatives is being prosecuted in this District for similar criminal conduct.

.



**Guidelines/PSR Calculations**

**Use of a computer – U.S.S.G § 2G1.3(b)(3).**

The PSR calculates that a guidelines enhancement is warranted pursuant to USSG § 2G1.3(b)(3) for use of a computer. 2G1.3(b)(3) provides:

.

> (3)  If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor, increase by **2** levels.

USSG § 2G1.3(b)(3).

Given the prevalence of technology in our everyday lives, the use of a computer (or other mobile device) to promote prostitution does not necessarily correlate to an increased seriousness of the offense. Applying a sentencing enhancement for the use of technology in the commission of an offense oftentimes does not account for the rapid advances in and widespread use of technology.

This consideration has been raised in the context of child pornography cases, and the same rationale is applicable to the instant offense conduct. Both USSG §§ 2G2.2 and 2G1.3 include a guidelines enhancement for use of a computer in the commission of an offense. In the context of the § 2G2.2, the Second Circuit found that use of a computer in the commission of the offense (possession of child pornography) is "all but inherent to the offense of conviction." United States v. Dorvee, 616 F.3d 174, 186 (2d Cir. 2010). Extending that analysis to sex trafficking, use of social media to further or promote

.

prostitution is part of the offense. Indeed, the vast majority of sex trafficking cases prosecuted in this District over the past several years involved the use of social media and/or Backpage,[2] and it is often that conduct upon which the interstate nexus rests.

Pimping involves a transactional relationship and requires communication between the client and pimp/broker, and between the pimp/broker and the prostitute. All modern business enterprises, legitimate and illegitimate, rely on technology. While posting advertisements on Backpage (or other online venues) and soliciting potential prostitutes on social media certainly facilitated Mr. Kelsey's illegitimate business venture, it is a reality of modern society that businesses have fully transitioned from knocking on doors (in the sex trade context, standing on street corners) to online advertising.[3]

Given that a guidelines enhancement for the use of a computer is now technically applicable in most sex trafficking cases, the enhancement does nothing to distinguish one sex trafficking case from another. In Mr. Kelsey's case, an increase in offense level for use of a computer would raise an already exceedingly high offense level past the point where the range provides any guidance.

---

[2] Backpage was shut down by federal authorities on or about April 6, 2018.
[3] While this conduct is distasteful and obviously criminal, women in the sex trade business often work with pimps and/or use the Internet rather than stand on street corners for long hours.

.

## **The Purposes of a Criminal Sentence Are Met by the Mandatory Minimum Term of Imprisonment.**

A sentence of 120 months' incarceration, with the onerous terms of Supervised Release that accompany a sex offense conviction, is sufficient to meet the purposes of sentencing identified in 18 U.S.C. § 3553(a)(2).

A sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. (18 U.S.C. § 3553(a)(2)(A)).  Mr. Kelsey's offense conduct is serious, but he did not participate in the kind of conduct that was envisioned when these laws were created.  Rather than work with a network of highly sophisticated individuals to entrap or kidnap unsuspecting minors, Mr. Kelsey worked, for the most part, alone.  Although Mr. Kelsey participated in this conduct with others, there was no joint business venture involving the pooling of resources or profits.  Mr. Kelsey engaged in a criminal lifestyle and was surrounded by family members and friends who condoned, and at times participated in, similar misconduct.

While Mr. Kelsey's sex trafficking of minors is without justification, it is significant for sentencing purposes that Mr. Kelsey did not seek to recruit or specifically target minors and his employment criteria was his victims' willingness and availability to participate in this conduct rather than their age.  Mr. Kelsey met people online who were troubled and vulnerable and entered into a business arrangement with them (albeit one that

6

.

was inequitable and inherently coercive). Mr. Kelsey, himself troubled and dysfunctional, made clear when contacting potential prostitutes that they would be required to exchange sex for money.

The statue sets out the different ways in which a defendant can violate this offense and Mr. Kelsey's conduct unquestionably falls within the prohibition of 18 USC § 1591. Congress enacted the statute as part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000) ("TVPA"), which included congressional findings demonstrating the intent behind the legislation, codified at 22 U.S.C. § 7101. In enacting the TVPA, Congress found human tracking to be a "contemporary manifestation of slavery" based on findings that included the following:

> (4) Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models. Traffickers also buy children from poor families and sell them into prostitution or into various types of forced or bonded labor.
>
> (8) Traffickers in persons is increasingly perpetrated by organized, sophisticated criminal enterprises. Such trafficking is the fastest growing source of profits for organized criminal enterprises worldwide. Profits from

.

> the trafficking industry contribute to the expansion of organized crime in the United States and worldwide. Trafficking in persons is often aided by official corruption in countries of origin, transit, and destination, thereby threatening the rule of law.

22 U.S.C. § 7101. During congressional hearings regarding the TVPA, congresspersons identified the need to pass legislation combating the use of imprisonment and torture to force persons into the sex trade. See, e.g., 146 Cong. Rec. S2729-01, S2768 (April 13, 2000) (Sen. Brownback explaining that girls are physically abducted, beaten, and held against their will, sometimes in chains); 146 Cong. Rec. H2686 (Rep. Abercrombie stating "[t]raffickers use rape, starvation, torture, extreme physical brutality and psychological abuse to force victims to work in horrible conditions as prostitutes"); 146 Cong. Rec. H7630 (Rep. Jackson-Lee stating "[t]rafficking victims suffer extreme physical and mental abuses, including rape, torture, starvation, imprisonment, death threats, and physical brutality"). While sex trafficking of a minor is a serious crime, the harsh penalties provided for in 18 USC § 1591 to punish organized enterprises that traffic multiple women using force, fraud, and coercion are not always appropriate in every case. Mr. Kelsey's conduct, while reprehensible, does not mirror the behavior that Congress sought to curtail through this legislation.

.

The second purpose of a sentence is "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).  The need for general deterrence will be met by a sentence of ten years' imprisonment followed by Supervised Release.  If the certainty of a federal felony conviction, lengthy term of imprisonment, sex offender registration and restrictive conditions of Supervised Release does not deter an individual contemplating committing this offense, it is hard to imagine that a longer period of imprisonment would provide further disincentive.  Federal sex trafficking cases have been aggressively pursued in this District and have resulted in similar periods of incarceration;[4] it is unnecessary to impose a sentence greater than 120 months' imprisonment solely to reinforce the message that punishment for this conduct will be severe.

---

[4] United States v. Bruce Damico, 3:10CR225(SRU)(defendant pleaded guilty to sex trafficking of minors; 121 months' incarceration); United States v. Kamar James, 3:12CR266(VLB)(defendant pleaded guilty to sex trafficking of a minor; 120 months' imprisonment); United States v. Edward Thomas, 3:14CR31(RNC)(defendant, previously convicted sex offender, convicted after trial of sex trafficking minors, guidelines range of 360 to life, 210 months' incarceration); United States v. Wellington Brown, 3:14CR160 (JBA)(defendant pleaded guilty to Conspiracy to sex trafficking of minors; 126 months' imprisonment); United States v. Sheena Dume, 3:14CR160 (JBA)(pleaded guilty to sex trafficking of minors, 72 months' imprisonment); United States v. Brandon Williams, 3:16CR96 (MPS)(defendant pleaded guilty to sex trafficking of minor, 74 months' imprisonment); United States v. Romane St. Christopher McKenzie, 3:15CR142 (JAM)(defendant pleaded guilty to sex trafficking of minor, 120 months' imprisonment); United States v. Jordan Anate, 3:15CR203 (VLB)(defendant pleaded guilty to sex trafficking of a minor, 120 months' imprisonment); United States v. Darryl Morris, 3:16CR153 (JAM)(defendant pleaded guilty to sex trafficking of a minor, 168 months' imprisonment); United States v. Jason Prawl, 3:16CR189 (MPS)(defendant pleaded guilty to sex trafficking of a minor, 151 months' imprisonment); United States v. Ramon Gomez, 3:16CR207 (AWT)(defendant pleaded guilty to sex trafficking of a minor, 96 months' imprisonment).

.

Likewise, a sentence of ten years' incarceration is more than sufficient to provide specific deterrence.  Mr. Kelsey will face significant restrictions while serving his sentence in the Bureau of Prisons due to his classification as a sex offender.  Upon release he will be required to register as a sex offender, and he will be under the supervision of the Probation Department.  As referenced in his PSR, Mr. Kelsey has served several short periods on incarceration in the past.  He now faces a mandatory term of imprisonment that is almost ten times as long as any other sentence he has previously received.  Such a sentence is sufficient to deter this individual and provide him with an opportunity to participate in rehabilitative and vocational programs away from counterproductive distractions that his home environment may have presented.  With time and intervention, it is unlikely that he will reoffend, knowing that he will serve an additional term of imprisonment should he violate the terms of his Supervised Release.

The third purpose of a sentence is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).  A term of imprisonment of ten years, followed by a term of community supervision will adequately protect the public.  As the Court is well aware, Mr. Kelsey will be subject to strict supervision upon his release from prison.  He will not be able to have unsupervised contact with minors.  His use of the Internet and his finances will be closely monitored.  He will be required to register as a sex offender and

.

subject to residency restrictions as a result of his conviction.  These conditions are punitive, while not by design but in effect, and ensure defendants have no opportunity to recidivate.

The fourth purpose of a sentence is "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).  ███████████████

███████████████████████████████  ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████ Whether he acknowledges it or not, Mr. Kelsey will need professional help to cope with the stress of his conviction and resulting sentence.

Pursuant to 18 U.S.C. § 3553, the Court must impose a sentence that is no greater than necessary to accomplish these purposes; the severe statutory mandatory minimum sentence is sufficient to satisfy the goals of sentencing.

**<u>CONCLUSION</u>**

For the foregoing reasons, a guidelines sentence would be far greater than needed to accomplish the goals of sentencing.  Mr. Kelsey respectfully submits that a sentence of

11

.

10 years, the statutory mandatory minimum, will adequately serve all of the purposes of sentencing and is in the interests of justice.

                        RESPECTFULLY SUBMITTED,

                        THE DEFENDANT,
                        TONEY KELSEY
                        BY__/s/ Audrey A. Felsen_____
                           Audrey A. Felsen, Esq.
                           Koffsky & Felsen, LLC
                           1150 Bedford Street
                           Stamford, CT  06905
                           Tel.: 203-327-1500
                           Fax: 203-327-7660
                           Federal Bar No.: ct20891
                           afelsen@aol.com

.

**CERTIFICATION**

THIS IS TO CERTIFY that on August 7, 2018 a copy of the foregoing was filed electronically and served by mail and/or hand delivered to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's CMECF.

AUSA Sarala Nagala
AUSA Marc Silverman
U.S. Attorney's Office
157 Church Street 125th Floor
New Haven, CT 06510

USPO Mark Myers
United States Probation Office
450 Main Street
Hartford, CT 06103

    __/s/ Audrey A. Felsen___
        Audrey A. Felsen